WILLIAM ALLEN et al. *v.* JAMES LEACH, Administrator
d. b. n. c. t. a. of WILLIAM ALLEN, Deceased.

New Castle, March Term, 1895.

Executors and administrators — remedies against — liabili-
ties of, in individual and representative capacity — de-
crees pro confesso against; Writ of sequestration de
bonis propriis; Devastavit; Practice.

1. A decree *pro confesso* against an administrator, is a decree,
in form, *de bonis testatoris*, and if there are tangible as-
sets in his hands, then process appropriate to that form
can alone be had; but if a *devastavit* has been commit-
ted, and there are no available assets, then recourse may
be had against him in his individual capacity.

2. In a suit against an executor or administrator, when he
has been guilty of neglect or waste, he necessarily ap-
pears in a double role, as a defender of himself in
both his representative and individual character. If
his liability as the representative of the deceased is
established, it would be conclusive as to his liability
as an individual co-extensive with that as administrator.
The liability in either case is ascertained in the same
way, and by the same degree of proof. The defenses
are also the same.

3. If an executor or administrator in a suit against him in
his representative capacity, pleads *plene administravit*,
and on issue it is found against him, his liability to the
extent of assets found in his hands, is fixed; and if they
be not forthcoming, he must answer out of his own prop-
erty.

4. The word " administrator " is descriptive only of the per-
son who has taken upon himself the responsibility of
administering the estate of a deceased person. As to
the property of the deceased, the administrator stands
in his place to dispose of it as the law directs. When

the heirs or creditors desire to reach it, it can only be done through himself, and whenever it is found that a *devastavit* has been committed, his own property can alone be reached through the same channel.

5. The remedy upon administration or testamentary bonds is cumulative, and not substitutional.

6. Bill filed by complainants, legatees, to recover their legacies from the respondent, the administrator, on two accounts corrected on exceptions by the Orphans' Court; the respondent pleaded *laches*, Statute of Limitations, and a pending right of appeal, but failed to add the affidavit that said pleas were not made for delay; complainants moved for a decree *pro confesso* for want of such affidavit, which was granted " or attachment in thirty days; " on expiration of this time, and failure to comply with this decree, complainants moved for a rule to show cause why decree had not been performed, or why attachment should not issue, which was refused, it appearing that respondent, although owning valuable real estate, was unable to raise the requisite amount. Held, that a writ of sequestration *de bonis propriis* should be granted, a *devastavit* having been committed.

Bill in Equity.— Bill filed by certain of the legatees under the last will and testament of William Allen, deceased, to recover from James Leach, the administrator, *de bonis non*, with the will annexed, their respective legacies or distributive shares of the funds shown to be in his hands by a corrected account on file in the register's office in and for New Castle County.

R. G. Harman and J. H. Whiteman, for complainant.

Assuming, for the sake of argument, that there is no *devastavit* charged in the bill, and that the action was

brought against, and the decree was found against, the defendant in his representative capacity as administrator, what would be the nature of the executions to enforce such decree?

The execution in the first instance would be, as to the principal debt, *de bonis testatoris, et si non,* then as to to the costs *de bonis propriis.*

Then, in the second instance, it would be one of these three, *scire fieri* inquiry, or action of debt on judgment suggesting a *devastavit,* in either case if sheriff return *nulla bona* only, or *de bonis propriis* if the sheriff return *nulla bona* and a *devastavit.* Tidd's Pr. *1025, *1114; 1 Saund. 219, note 8; 4 Cow. 445.

In this case it should certainly not be either a *scire fieri* inquiry or an action of debt on judgment suggesting *devastavit.*

It should not be *scire fieri* inquiry (i. e., that a jury should decide for the sheriff whether or not there was a *devastavit*), because this writ was solely for the sheriff's protection, when he did not care to take the risk of returning a *devastavit,* " for the inquisition is for the sheriff's security." 1 Comyn's Dig. 365; 1 Salk. 310; 1 Saund. 219, note 8.

In this case neither the sheriff nor any other officer makes any return at all, but in lieu of that the defendant himself comes into court and with his own lips says in substance, *"Nulla bona* and a *devastavit,"* since he has no goods and his pleas confessed and the decree found that he had assets.

The reason for this writ in this case, therefore, is wholly removed and completely taken away, and, "when the reason ceases, the law should cease."

It should not be action of debt on judgment suggest-
ing *devastavit*, because the defendant cannot in this ac-
tion plead any defense that he could have pleaded to
the original action; he cannot, therefore, plead nor give
in evidence want of assets (*plene administravit*).    It is
therefore, productive of unnecessary delay and expense,
since the plaintiff is bound in the end to recover a judg-
ment, *de bonis propriis*, and, as Chief Justice Savage
says, the driving of one to such a circuitous and wholly
unnecessary proceeding is unreasonable, and it savors of
" technical formality rather than substance."    4 Cow.
445; 1 Saund. 219, and cases cited.

But from the facts in this case it should be *de bonis
propriis*, because, as no officer makes any return and he
practically admits *devastavit*, there can absolutely be no
use for a *scire fieri* inquiry.

As he cannot plead or give in evidence " want of as-
sets" in the second action, there is no use for an action of
debt on judgment suggesting a *devastavit*.    4 Cow. 445;
1 Saund. 219, notes b and c.    This was the most ancient
practice and is still the law of to-day when a sheriff sees
fit to return *nulla bona* and a *devastavit*.    1 Saund.
219, note 8.    And as the defendant himself practically
returns *nulla bona* and a *devastavit*, this should be the
nature of the execution.    Equity acts by analogy to the
law and equity follows the law.    *De bonis propriis*
saves delay and expense.

The above argument is upon the supposition that the
bill contains no *devastavit* and that the decree is against
the defendant in his representative character, but if the
bill does contain a *devastavit*, and we respectfully

so contend, then all the above may be completely dismissed, for the word " executor " or " administrator " are each words of description or of surplusage, and standing alone and unmodified mean, in a judgment or a decree, a judgment or a decree *de bonis propriis* and not a judgment or a decree of *de bonis testatoris*, but if there be any doubt whatever, a court will always refer to the pleadings to ascertain the true manner in which either was sued. 7 Am. & Eng. Ency. of Law, 378, 404; 6 N. Y. 168; 2 Barb. 370; 37 Iowa, 555; 1 Wis. 36; 24 id. 478; 16 Mass. 528; 2 Ohio, 156; 7 Harr. & J. (Md.) 21.

Upon a return of a sheriff of *nulla bona,* suggesting *devastavit,* the judgment creditor could forthwith order execution *de bonis propriis,* and the Chancellor, by analogy to law, can likewise order execution *de bonis propriis.* 4 Cow. 445; 1 Salk. 310; 1 Saund. 219, note a.

If an executor or administrator· admits assets, he thereby becomes personally responsible. 7 Am. & Eng. Ency. of Law, 382, 408; 2 Harr. 211; 5 Myl. & Cr. 63; 56 Ala. 138.

In administration of assets (i. e., payment of debts or legacies), executors or administrators cannot be sued as such in equity, for Chancery has no jurisdiction over them as executors or administrators. It is only by treating them as trustees that it has jurisdicion. 3 Williams on Executors, 588; 2 Story's Eq. Jur., § 1067; 1 id., § 532.

Anthony Higgins, for respondent.

WOLCOTT, CHANCELLOR.— This case is founded on a bill filed by certain of the legatees under the last will and testament of William Allen, deceased, to recover from James Leach, his administrator, *de bonis non* with the will annexed, their respective legacies or distributive shares of the funds shown to be in his hands by a corrected account on file in the register's office in and for New Castle County.

The bill sets forth the will of the deceased *in extenso*, and the subsequent granting of letters of administration to the respondent in due form of law. It also states that the said administrator afterwards passed two accounts before the said register, to which the parties in interest excepted on the ground of error and fraud on the part of the administrator, and the said accounts were corrected by the Orphans' Court of New Castle County pursuant to the prayers of the exceptants. It also states that by this proceeding the greater portion of the estate, after deducting debts and legitimate expenses, was found to be in the hands of the administrator, whereas the accounts passed by him showed it to be almost entirely extinguished. The bill, by reference to the corrected account and the proceedings in the Orphans' Court that led up to it, are expressly made a part of the complainant's ground of complaint, which show that the moneys represented by the corrected account were lost by the administrator by depositing the same with private banks to his own credit, and which subsequently failed. It is also alleged in the bill that repeated demands had been made upon the respondent for payment and that he had repeatedly refused to comply therewith.

The respondent pleaded the Statute of Limitations,

*laches* and a pending right of appeal, but he did not. under the rule accompany the pleas with an affidavit that they were not .filed for delay, etc., whereupon the solicitors for the complainants moved for a decree *pro confesso* for want of the required affidavit. On the 18th day of February, the motion was granted and a decree entered ordering the payment of the amounts due to the respective complainants according to the prayer of the bill or attachment in thirty days.

At the expiration of the time limited for the performance of the decree, a motion was made for and a rule granted on the respondent to show cause why the decree had not been performed or attachment should not issue, returnable the 25th day of March, A. D. 1895.

Upon the hearing, it appearing that James Leach, though he had valuable real estate, was so embarrassed financially that he could not raise money to satisfy the decree, the court declined to issue a writ of attachment, and thereupon the solicitors for the complainants moved for a writ of sequestration *de bonis propriis.*

The question to be decided now is, whether this writ can issue.

I have not been able to find any reported cases in equity, either in this country or in England, that shed much light on this subject. We are, therefore, compelled to fall back upon general principles as the source of light and guidance in the effort to arrive at a wise and sound conclusion.

The decree now sought to be enforced is a decree against James Leach, administrator, *de bonis non* with the will annexed, of William Allen, deceased. In form it is, therefore, a decree *de bonis testatoris,* and if there

were tangible assets in his hands sufficient to respond to its requirements, then process appropriate to the enforcement thereof could alone be employed; but if, by reason of a *devastavit* committed by the administrator, there are no available assets in his hands, then recourse may be had to him in his individual capacity. Can it, however, be done in the way proposed? Why not?

It certainly cannot be objected to on the ground that the defendant administrator has not had full opportunity to establish his innocence and the consequent absence of personal responsibility, if he could so do. The bill contained a clear statement of the complainants' ground of complaint, to which he had the right either to make answer or plead. He elected to plead. The result was a decree *pro confesso*, which was equivalent to a confession of his individual liability. Now, in a suit against an executor or administrator, when he has been guilty of neglect or waste, he necessarily appears in a double role, as a defender of himself in both his representative and individual character. If his liability as the representative of the deceased is established, it would be conclusive as to his liability as an individual co-extensive with that as administrator. His liability as an administrator is the exact measure of his liability as an individual. The latter is the concomitant or inevitable result of the former. Liability in either case is ascertained in the same way and by the same degree of proof. The defenses that he may interpose in a suit either against himself as administrator or as an individual, are also the same, and if he fails to make good his defense in a suit against himself as administrator, he will also fail in a suit against himself as an individual when the cause

of action is the same.    Hence, if a decree against an ex-
ecutor or administrator, as such, is sought to be enforced
against him by process *de bonis propriis,* because he has
wasted the assets of his decedent, he cannot complain
that he has not had his day in court, for he has had it just
as much so as if a suit had been brought against him as
an individual, and a decree entered upon an express alle-
gation of *devastavit.*

Suppose an executor or administrator, in a suit against
himself in his representative capacity, sets up the plea of
*plene administravit,* and upon issue joined, it is found
against him, his liability to the extent of assets found in
his hands is fixed, and if they be not forthcoming upon
proper demand made, he must answer out of his own
property, and there is no plea that he could plead in
this or any other tribunal by which he might escape the
effect of such finding.

What is the object of our system of pleading and
modes of procedure?    It is that all parties may be in
court, so that each shall have full opportunity to prepare
for trial — to present, in a clear and logical form, fully
as possible, all the grounds of defense as well as of action.
This being done, the end of pleading and of the prelim-
inary or initial process is served or accomplished.    Now,
if an executor or administrator has had his day in court
in both his representative and individual capacity, as has
been shown, what good purpose could be served, or how
could the ends of justice be better promoted by the insti-
tution of another suit or the commencement of a new
proceeding with the sole view of fixing his personal re-
sponsibility?    He could do no more than he has already
done.    He would be estopped at any stage of its progress

except as to matters arising subsequent to the entry and enrollment of the decree. He could show in the individual suit only a performance of the decree in whole or in part. An entire performance would be a complete defense, a partial performance would be a defense *pro tanto*.

In this case, the defendant appeared and permitted a decree *pro confesso* to be entered against him, thereby admitting all the allegations contained in the bill to be true. His lips are, therefore, closed. And in any other suit that might be instituted or proceedings begun to establish his personal liability, he would be estopped from denying or even qualifying any of the statements upon which the decree is founded. The facts thus admitted clearly constitute a *devastavit*, and render the administrator liable *de bonis propriis* to the parties entitled under the decree. And if the *devastavit* did not appear by the pleadings, it does by the proof produced at the hearing of the rule to show cause. And whether it appears by the pleadings or by appropriate proceedings subsequent to the decree, it makes no difference. The result is the same. Now, can any substantial reason, in view of what has been said, be assigned why a writ of sequestration shall not issue against the defendant as prayed for? Certainly not. The adoption of such a course can work injury to no man. While it is the policy of the law to guard with scrupulous care the rights and privileges of defendants, yet it does with equal care protect those who have been minors and orphans from the losses and annoyances incident to the delays and shifts which the ingenuity of reckless guardians and administrators have devised to stay the hands of justice.

16

Equity disfavors circuity of action and multiplicity of suits. What it can accomplish directly it will not attempt to do indirectly.

The mode herein outlined of enforcing obedience to a decree obtained against an executor or administrator is very analogous to the common-law mode of executing a judgment against such a party.

Originally if the sheriff return *nulla bona* and also *devastavit* to a *fieri facias de bonis testatoris* sued out on a judgment against an executor, it was sometimes the practice of the court to sue out a *capias ad satisfaciendum* against the executor or a *fieri facias de bonis propriis*. This practice prevailed in the King's Bench. But it is urged that the decree is against the administrator, and not the individual, and it, therefore, furnishes no authority or basis for the issuance of execution process against him personally. It is interposed as an insuperable objection to the conclusion arrived at; but when viewed in the light of common sense, it resolves itself into a mere refinement which has no foundation either in reason or practice.

The word " administrator " is descriptive, only, of the person who has taken upon himself the responsibility of administering the estate of a deceased person. As to the property of the deceased the administrator stands in his place to dispose of it as the law directs. When the heirs or creditors desire to reach it, it can be done only through himself, and whenever it is found that a *devastavit* has been committed, his own property can alone be reached through the same channel. So that he is the common medium through which his effects and those of the deceased are accessible to the parties

who are legally interested therein. Therefore the subtle distinctions in which the administrator and the person who bears that title are treated as two separate legal entities, are the mere inventions of astute and ingenious lawyers that embarrass rather than facilitate the attainment of the ends of justice.

Then there is another objection presented equally technical and I might say equally groundless. It was contended, not very earnestly, however, that a *devastavit* having occurred, the jurisdiction of this court ceased after the entry of the decree. That is to say, though a legatee or distributee has a remedy in a court of equity by which to enforce his claim, yet, after decree obtained against the executor or administrator, if it be found that he has wasted the assets and has thereby become personally liable, the decree, so far as being able to realize thereunder, is a nullity. It would in effect be saying to the legatee or distributee that you may pursue your remedy under such circumstances in equity until it culminates in a decree, but you cannot have any execution process through which to enforce its performance. That would in law be a solecism. It would be like a penal statute without a penalty. If such were the law it would make the Court of Chancery a mere accounting office to ascertain the state and amount of the accounts of persons holding fiduciary relations, as the foundation of actions in behalf of their beneficiaries in another forum.

The case of Wheldale v. Wheldale in 16 Vesey, Jr., page 376, decided by Sir William Gravel, Master of the Rolls, is an authority in support of this proposition. The question was whether a debt due under a *devastavit*

was due from the date of the decree or from the com-
mission of the *devastavit.* The facts recited in the case
out of which this proceeding grew are very similar to
the facts in this case. The suit was instituted by the
plaintiff, the residuary legatee named in the will of her
grandfather, Thomas Wheldale, against Thomas Whel-
dale, her uncle, and sole executor of the deceased, pray-
ing an account of the testator's personal estate; and that
the residue may be secured for the plaintiff's benefit.

. The defendant by his answer admitted the probate
of the will and stated that, being an officer and chiefly
employed abroad, he had left the management of the
testator's affairs to John Wheldale, the defendant's
brother, and father of the plaintiff, and to testator's
friend and confidential adviser; and that he had per-
mitted the said John Wheldale to take certain property
valued at £645 8s. 7d, for which the said John Whel-
dale executed a bond to the defendant. The answer
further stated that the said John Wheldale became a
bankrupt on the 14th day of July; 1798, and that the
defendant proved the bond and received £361 for a divi-
dend under the commission. The defendant did not
appear at the hearing of the cause. and the plaintiff took
a decree for the usual amount, to be ascertained by the
master. The Master, by his report, found the facts as
stated in the answer, and charged the defendant with
the value of the property thus admitted. On further
directions, on the 4th of May, 1809, the defendant
not appearing, a decree was taken for the sum of £645
8s. 7d. On the 8th day of June, 1809, a writ of execu-
tion of this decree was issued; on the 10th of June, 1809,
the defendant was charged with an attachment for

breach of this writ of execution; and on the 20th of June he was brought up by *habeas corpus* and committed to the Fleet, and was afterwards by another *habeas corpus* recommitted to the King's Bench prison, charged with the process of the court. He was finally discharged by the Lord Chancellor because of his bankruptcy. In this case the answer admitted the *devastavit*, and the Master of the Rolls found to be due the plaintiff the admitted value of the wasted property, and a decree was subsequently entered by the Lord Chancellor ordering the payment of the sum thus found to be due, and in execution of which a writ was issued, for breach whereof the defendant was arrested and imprisoned on attachment. It is, therefore, an authority which sustains the view here taken.

But in the Court of Common Pleas it is said that a different practice obtained. That upon a suggestion in the special writ of *fieri facias*, of a *devastavit* by the executor, the sheriff was directed to inquire by a jury whether the executor had wasted the goods, and if the jury found he had, then a *scire facias* was sued out against him, and unless he made a good defense thereto execution was awarded *de bonis propriis*. It afterwards became the practice of both courts for the sake of expedition, to incorporate the *fieri facias* inquiry and *scire facias* into one writ, thence called a *scire fieri inquiry;* a name compounded of the first words of the two writs of *scire facias* and *fieri facias* and that of inquiry, of which it consists. The writ recites the *fieri facias de bonis testatoris* sued out on the judgment against the executor, the return of *nulla bona* by the sheriff, and then suggesting a *devastavit*, commands the

sheriff to levy the debt and damages of the goods of the testator in the hands of the executor if they could be levied thereof, but, if it should appear to him, by the inquisition of a jury, that the executor had wasted the goods of the testator, then the sheriff is to summon the executor to appear, etc.

The proceeding by *scire facias* on a judgment against the executor was the one recognized and adopted in our act of Assembly, creating and regulating the jurisdiction of justices of the peace in this State. Section 10 of that act, being chapter 99, Revised Code, provides that any judgment before a justice of the peace against an executor or administrator shall be a judgment of assets, to the extent of the assets found to be in his hands either before or after judgment rendered, which, according to law, ought to be applied to the cause of action. It then provides that if execution on such judgment shall be returned unsatisfied for want of assets the plaintiff may sue out a *scire facias* upon a suggestion of waste against the executor or administrator, and if the defendant shall not appear and show sufficient cause to the contrary he shall be deemed guilty of waste and shall be personally liable for the amount of the original judgment; and judgment and execution shall be awarded accordingly as for his own debt. This seems to be very similar to the practice which prevailed in the English Court of Common Pleas prior to the blending of the practice in the Court of Common Pleas and the Court of King's Bench. If we take this as indicative of the practice that might be adopted in the Superior Court of this State, then by analogy, the rule adopted in this case does not widely differ therefrom.

It may be suggested that the common-law practice in relation to the execution of judgments against executors or administrators *de bonis propriis,* has been supplanted by the remedy afforded to parties interested in estates of deceased persons upon the testamentary or administration bonds required to be taken.   But I take it that such remedy is merely cumulative and not substitutional.

In this case a rule to show cause why the decree has not been performed or why an attachment should not issue has accomplished the very same thing that a *scire facias* would, sued out on a judgment against an executor or administrator, obtained before a justice of the peace, namely the ascertainment of the commission of a *devastavit* on the part of the administrator as a condition precedent to the awarding of process *de bonis propriis.* I do not think that it is necessary, however, to lean on the analogy to the law in regard to the practice relating to the execution of judgments against executors or administrators, in order to support the rule laid down in regard to enforcing decrees in this court, against such parties, as the reason adduced is quite sufficient to vindicate its propriety and justice, independently of the practice that prevailed in the common-law court prior to the Revolution and the establishment of the Colonies as independent sovereignties.