JOSEPH W. PERRINE AND JULIA A. PERRINE,

*vs.*

THE PENNROAD CORPORATION, a corporation of the State of Delaware, THE PENNSYLVANIA RAILROAD COMPANY, a corporation of the Commonwealth of Pennsylvania, WILLIAM W. ATTERBURY, EFFINGHAM B. MORRIS, JAY COOKE, LEVI I. RUE, RICHARD B. MELLON, ALBERT J. COUNTY, HENRY H. LEE, JOSEPH WAYNE, JR., AND A. H. S. POST AND EFFINGHAM B. MORRIS, WILLIAM M. POTTS AND JOSEPH WAYNE, JR., as Voting Trustees under Voting Trust Agreement dated May 1, 1929, in respect of the common stock of THE PENNROAD CORPORATION, a corporation of the State of Delaware.

*New Castle, July 19, 1933.*

*Aaron Finger,* of the firm of Richards, Layton & Finger, (*Frank M. Swacker* and *Hugh F. O'Donnell,* both of New York City, on the brief), for complainants.

*Hugh M. Morris* and *Ivan Culbertson,* for intervening complainants.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for moving defendants.

THE CHANCELLOR: The order for constructive service entered in this cause was based on *Section* 3850, *Section* 7, of the *Revised Code* of 1915, as amended by the Act of April 29, 1929, 36 *Del. Laws, c.* 268. The Section in its amended form is as follows:

"3850. *Sec.* 7. ORDERS FOR APPEARANCE; UPON FAILURE OF SERVICE AND AFFIDAVIT; PUBLICATION OF; UPON DEFAULT; DECREE PRO CONFESSO; ENFORCEMENT BY SEIZURE OR DELIVERY OF PROPERTY DEMANDED; PAYMENT UPON SECURITY FOR RESTITUTION; PROCEEDINGS IF SECURITY NOT GIVEN; FOREIGN ATTACHMENT:—If, after subpoena or other process issued, any defendant therein named shall not appear in obedience to said process and according to the rules of the Court, the Court may, on affidavit that such defendant is out of the State, or

cannot be found to be served with process and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day and publish such order as the Chancellor shall direct not less than once a week for three consecutive weeks. And if the defendant shall not appear, after such publication, according to such order, the Court may order the plaintiff's bill to be taken *pro confesso*, and may thereupon issue process to compel the performance either by seizure of the real and personal property of such defendant or part thereof, sufficient to satisfy the plaintiff's demand, or by causing possession of the estate, or effects, demanded by the bill, to be delivered to the plaintiff, or otherwise, as the case requires. And the Court may also order the plaintiff to be paid his demand out of any property so seized, upon his giving approved security, in a sufficient sum, to abide any order of the Court for the restitution thereof upon the defendant's appearing to defend the suit, and paying such costs as the Court shall order. If such security be not given, the property seized, or whereof possession shall be decreed to be delivered, shall remain under the direction of the Court in the hands of a receiver or otherwise, until the defendant's appearance, or until such order shall be made therein as the Court shall think just.

"If it shall appear in the bill of complaint that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, it shall be lawful for the Chancellor to make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Chancellor may direct, not less than once a week for three consecutive weeks. The Chancellor shall have power to compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Chancellor to pay the demand of the complainant, if the defendant shall not appear, or shall otherwise default. Such property shall remain subject to said seizure and may be sold to satisfy any decree made in the cause, unless security sufficient to the Chancellor shall be given to secure the release thereof. The Chancellor shall have power to make all necessary rules respecting the form of process, the manner of issuance and return thereof, the release of such property from seizure and for the sale of the property so seized, and may require the plaintiff to give approved security to abide any order of the Chancellor respecting the said property. Any transfer or assignment of the property so seized as aforesaid after the seizure thereof shall be void and after the sale of said property is made and confirmed, the purchaser

shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the said purchaser all the right, title and interest of the defendant in and to said property as fully as if the defendant had transferred the same to the purchaser in accordance with Law."

The bill, as shown in the statement of facts, has a dual aspect. It aims first to annul the voting trust arrangement, and second to establish, through an accounting, a personal liability of certain of the defendants for the damage done to the Pennroad Corporation by their alleged wrongful and fraudulent behavior. The non-resident defendants, Morris, Potts and Wayne, Jr., "as Voting Trustees under Voting Trust Agreement dated May 1, 1929, in respect of The Pennroad Corporation, a corporation of the State of Delaware" are by that name and style made parties to the bill. The same persons, however, are also made parties in their individual capacities.

The attempted service upon them by publication in obedience to the order in that behalf was made upon them in their status as trustees. The order was particularly confined in that respect and the publication which ensued called upon them to appear only "as Voting Trustees, etc.," as above set out.

1. The moving defendants, in the first ground they advance in support of the vacation of the order and the quashing of the alleged constructive service, proceed on the assumption that if they appear generally as trustees in defense of that branch of the bill which seeks to strike down the voting trust, such general appearance will operate to draw them before the court in their individual capacities and thus subject them to a liability under that branch of the bill which seeks to require them personally to account to the Pennroad Corporation for the alleged frauds which they are charged with having shared in perpetrating upon it. There is no power in the court, say the moving defend-

ants, to subject them to a personal decree unless they are personally served with process, or property of theirs is found within the jurisdiction and seized by the court and proceedings taken as provided for under the second paragraph of *Section* 3850, quoted *supra,* in which later case the decree can be made good only to the extent that the seized property is capable of satisfying it. There can be no objection to this contention in its application to purely personal decrees calling for the payment of money. *Cantor v. Sachs, et al.,* 18 *Del. Ch.* 359, 162 *A.* 73, 79. In that case it was said that "publication and notice by mail in cases of personal suits  *  *  *  would be useless gestures in the absence of a seizure of property belonging to the defendant."

The moving defendants, then, assuming that if they appear "as trustees, etc.," in defense of the first aspect or phase of the case they will by their act of appearing in that role be appearing also as individuals in response to the second phase of the case and thereby subject themselves to the jurisdiction of the court over them in respect of a ground of complaint involving "many millions" of personal liability—a jurisdiction over them which the court is utterly powerless to exert because neither have they been personally served with process nor has any of their property been seized against which a liability to respond to a decree can be enforced—take the position that the court should not proceed to an adjudication of the question of whether the trust under which they are acting should be annulled without affording them an opportunity to be heard in its support and exact of them, as a price for being heard in their official capacities, a submission of themselves as individuals to the jurisdiction of the court over them in a distinct controversy in which many millions of liability is asserted against them. They cite *Zimmerman v. Barnes,* 56 *Kan.* 419, 43 *P.* 764, in support of their position, in this regard, and the complainants cite *Bede Steam Shipping Co. v. New York Trust Co.,* (*D. C.*) 54 *F.* (2d) 658, *contra.*

I have in the immediately preceding paragraph briefly stated the substance, as I understand it, of the first contention made by the specially appearing non-resident defendants.

The contention, however, does not appeal to me as tenable. I say this for the reason that the assumption upon which it proceeds is an erroneous one. I do not think it is true that if the non-resident defendants appear in their official roles as trustees, in which capacity they are sued and are *eo nomine* notified by the publication to appear, they can in any sense be held to have appeared as individuals. The case is entirely different from *Zimmerman v. Barnes, supra.* In that case the defendant was such in only one capacity—his individual capacity. Whether, therefore, the rule of the Kansas case is a sound one, as is contended by the defendants, is a question which the facts of this case do not call upon me to say. I have no hesitancy in declaring that if the non-resident trustees should appear simply "as trustees, etc.," their act in so appearing should not result in their being treated as present before the court in their individual capacities and that no accounting relief should be afforded against them as individuals.

If a complainant chooses to tie up in the same bill two grounds of complaint against a non-resident, one against him in his official capacity and another one against him in his individual capacity, it seems to me to be out of all reason to say that if the defendant appears to defend his office in response to notice by the court to do so, it is right and just to say to him—"you cannot appear in your official capacity as noticed to do in defense of one of the grounds of complaint unless you at the same time appear also in your individual capacity in response to the ground of complaint asserted against you personally." If it were not so, in such a case as this we would have the result in all likelihood that a trust which is sought to be destroyed would be deprived of the aid which its trustees could afford, and

which it is their duty to supply, in protecting it, for it is not to be assumed that trustees would care to defend the trust at the price of voluntarily subjecting themselves to the risk of a decree for personal liabilities which no one can compel them to incur. They should not be put to a hazard of that sort, no matter how great may be their confidence in their own sense of exemption from personal liability.

The observations hereinbefore stated must of course be read in the light of the nature of the case which evokes them. The principle of *Allen, et al., v. Leach,* 7 *Del. Ch.* 232, 44 *A.* 800, where it was determined that a decree, in form *de bonis testoris,* rendered against an administrator, could be enforced against him in his individual capacity upon a showing that a devastavit had been committed, has no application here. In a case of that sort the administrator is liable in his individual capacity to pay the sum decreed to be paid by him in his official capacity if he has allowed the estate committed to his care to suffer a devastavit. The opinion of the Chancellor shows the grounds upon which he based his conclusions to have been that the defendant in his official capacity had had every opportunity to contest the primary fact of liability charged in the bill calling upon him to account, and that to require a separate bill to be filed against him simply for the purpose of establishing the dissipation of the assets, upon which his personal liability is based, would be to indulge in a useless circuity of actions.

In this case, however, the trustees as such are called upon by the bill simply to appear and defend the lawful existence of the trust. That issue involves in no sense an examination of the question of whether the individuals who happened to have acted as trustees were guilty of such acts as, if done, would subject them to a personal liability for money.

It would be a great injustice to the non-resident trus-

tees to notify them to appear *qua* trustees for the purpose of defending the issue of whether their alleged trust exists, and, after they had appeared, to tell them that they were also present in court as individuals and liable as such to respond to any decree that might be rendered against them for the payment of money. See *Michigan Trust Co. v. Ferry,* (*C. C. A.*) 175 *F.* 667. The court in *Hay v. Tuttle,* 67 *Minn.* 56, 69 *N. W.* 696, denounced what appears to be a less aggravated situation than the suggested one, as a "constructive fraud" upon a non-resident defendant who had come into court in response to one demand and then found the plaintiff changing front on him by asserting a different one. The complainants in the pending cause evidently recognize that they could secure no relief against the trustees as such for money payments, because they join the persons who are trustees as defendants in their individual capacities and the prayer for an accounting is directed against them solely as individual defendants.

I shall regard the pending motion, therefore, on the theory that the case is one where the only relief sought by the bill, so far as the moving defendants are presently concerned, is a decree declaring the trust to be void.

So regarding it, I proceed to examine the other grounds put forward by the trustees in support of their motion. The first ground advanced by them is not accepted.

2. It is urged that constructive service upon non-residents is ineffective without a preliminary seizure of property within the state belonging to such non-residents. As a general proposition this contention, with a slight modification not necessary to mention, may be accepted as sound if it is to be confined to suits *in personam.* I took occasion in *Cantor v. Sachs, et al., supra,* to deal somewhat at length with that proposition.

But it has never been held that a court is powerless to bring non-residents before it by constructive service unattended by seizure, if the suit is one wherein the relief sought

relates to the status, title or ownership of property actually located within its jurisdiction. This principle is recognized in *Cantor v. Sachs, et al., supra,* and is too well settled to call for extended discussion. If such were not so, then a variety of suits which courts of equity repeatedly take jurisdiction of could never be entertained. Bills for the removal of clouds upon title, for the foreclosure of mortgages, for the establishment of trusts, and the like, have long been recognized as properly tenable in equity to the point of a final decree when the property which is the subject matter of their controversy is located within the jurisdiction and when non-resident defendants who are concerned therein have been brought before the court by constructive service only, without actual seizure of the *res* in dispute.

The bill here seeks a decree that certain property, viz., shares of stock in a Delaware corporation, is not subject to a voting trust, and that its legal title be decreed to the present holders of the voting trust certificates. The property in question has its situs in this State. *Section* 72 of the *General Corporation Law (Rev. Code* 1915, § 1986) under which the property was created so declares and this court has so held. *Bouree v. Trust Francais, etc.,* 14 *Del. Ch.* 332, 127 *A.* 56; *Wightman v. San Francisco Bay Toll-Bridge Co.,* 16 *Del. Ch.* 200, 142 *A.* 783; *Nye Odorless Incinerator Corp. v. Nye Odorless C. Co.,* 18 *Del. Ch.* 179, 156 *A.* 176. The case of *Hunt v. Drug, Inc.,* 156 *A.* 384, decided by the Superior Court of this State is to the same effect. So far as the trustees are concerned, the suit simply seeks to determine the legal ownership and control of that property. That being so, seizure of it is unnecessary as a prerequisite to jurisdiction over the trustees. Service upon them by publication is sufficient. Indeed if there had been a seizure under the second paragraph of *Section* 3850 as amended, the nature of the suit against the trustees is such that the seizure would be ineffective as process. *Wightman v. San*

*Francisco Bay Toll-Bridge Co., supra.* The complainants were required to adopt the substituted service provided for by the first paragraph of the section. That service by publication is sufficient, so far as the trustees are concerned, in cases such as this is in principle held in the following cases: *Hodgman v. Atlantic Refining Co., (D. C.)* 274 *F.* 104; *Harvey v. Harvey, (C. C. A.)* 290 *F.* 653; *Franz v. Buder, (C. C. A.)* 11 *F.* (2d) 854; *Ryan v. Seaboard & R. R. Co., (C. C.)* 83 *F.* 889; *Gideon v. Representative Securities Corp., (D. C.)* 232 *F.* 184. The jurisdiction of the court in cases of this sort is founded in the sovereign's power over the *res.* "The foundation of jurisdiction is physical power," observed Mr. Justice Holmes in *McDonald v. Mabee,* 243 *U. S.* 90, 37 *S. Ct.* 343, 61 *L. Ed.* 608, *L. R. A.* 1917*F,* 458. The presence of the *res* within the State confers jurisdiction over it, and the absence of a party interested in its disposal cannot serve to stay the jurisdiction's full and complete exercise, provided of course the absent person is given notice in some form recognized by the law as sufficient. Seizure *in limine* is not in all cases essential.

The defendants argue that, as the bill prays that the voting trustees be required to transfer the stock registered in their names to the complainants and others of the beneficial owners, the suit in that particular is strictly *in personam,* that the principles applicable in proceedings which are *in rem* or *quasi in rem* are hence not applicable, and therefore that a decree directed against the persons of the trustees to do the personal act of transferring the stock can have no effect if the non-resident persons have never been served personally with process. It is to be borne in mind, however, that the bill prays for a decree declaring the trust to be annulled and the legal title to the stock, with all its voting incidents, to be conferred on the complainants and others who are similarly situated, free from the provisions of the trust agreement. This court is not without power, if the complainants should establish their conten-

tions, to effectuate its decree declaring that the cloud of the trust should be removed from the title to the stock, without ever calling upon the trustees to do any personal act in aid of the decree's full effectuation. It could in virtue of the express provisions of *Section* 3850 as amended under which the substituted service has been had, seize the stock and cause its possession to be delivered. The mechanics of how this could be done without the active assistance of the trustees need not now be discussed. Furthermore, *Section* 3860*A, Section 17A* of the *Revised Code of* 1915, as amended by 33 *Del. Laws, c.* 229, provides for the appointment of a master by the Court of Chancery to execute "any conveyance, assignment, release, acquittance or other instrument" decreed by it to be executed, in case the party against whom the decree is made shall not comply therewith as ordered.

The proceeding in the phase of it now under discussion is essentially one which is *quasi in rem,* and when that is so, the powers of the court to effectuate its decree being as broad as I have just pointed out, there can be no valid objection to further proceeding with the cause if the service by notice and publication (unsupplemented by immediate seizure), which has been had, is not otherwise objectionable as a foundation for regarding the trustees as constructively present before the court. *Amparo Mining Co. v. Fidelity Trust Co.,* 74 *N. J. Eq.* 197, 71 *A.* 605.

3. Under this head the defendants object that the published notice did not sufficiently advise them of the nature of the suit and that therefore the substituted process is insufficient. The notice consisted of a full copy of the Chancellor's order directing the absent trustees to appear on or before the day named therein and answer the bill which had been filed against them in this court by the complainants herein. The order will not be set out in full. It is sufficient to say that the notice contained equally as much information as does the usual subpoena which from ancient times has

been issued out of Chancery. The parties suing were named and the three non-resident trustees were disclosed as the parties being sued. The court in which the bill was filed was stated, and the day on or before which the defendants were required to answer was specifically designated. The objection seems to come down to this— that the non-residents should have been advised by the notice of the nature and character of the relief sought in the suit. A summons at law of course discloses no such information, neither does a subpoena in equity. There is no statute in this state nor rule of court requiring it. I am unable to see why the non-resident defendants should be favored by any fuller notice than was given to the resident defendants upon whom subpoenas were served. The cases cited by the defendants in support of their position are not applicable, for if they did not turn on statutory requirements or on the exactions of court rules, they were cases where the published notice was directed to unknown and therefore unnamed parties, in which case there might be some reason to say (though I am not called upon to decide) that the notice should contain some reference to the nature of the suit and the property against which it was directed.

It is further contended that the publication in the Morning News, a daily newspaper published in Wilmington, Delaware, was an insufficient publication because it cannot be expected that the defendants would be readers of that paper and would therefore receive the notice. No case has been cited to me nor am I acquainted with any which holds, that publication of notice to appear is insufficient if it appears only in newspapers of general circulation published in the domicile of the jurisdiction. The practice, I suspect, in the absence of statute, is well nigh universal to adopt publication of that type, and, if it be bad, it is surprising that no case is cited holding it to be so. In this case the defendants were ordered to be given additional notice by mail. This was in obedience to *Rule* 19 of this

court. The fact is, the defendants received notice, as their special appearance evidences. Whether such notice by mail, there being no statute requiring it, was purely *ex gratia* and therefore not to be regarded as an element in considering whether the requirements of due process of law have been met, I shall not pause to discuss. The newspaper publication was alone sufficient to constitute notice.

4. It is next objected that *Section* 3850 of the *Code* as amended does not apply to suits against non-residents, except where a money decree is sought and there has been some sort of seizure of their property within the State. This objection is untenable. In *Wightman v. San Francisco Bay Toll-Bridge Co.,* 16 *Del. Ch.* 200, 142 *A.* 783, it was expressly held that the second paragraph of *Section* 3850 of the *Code* as it then stood (35 *Del. Laws, c.* 217) applied to suits against non-residents only in cases where a money decree was sought; but that the first paragraph of the section was applicable in suits against non-residents where a decree was sought, not for money payment, but settling the title to personal property. That case answers the present contention, unless some change has been made in the statutory law since it was decided. It is argued that such a change has been made. The change consists in this, that *Section* 3856 of the *Code* was in effect when the *Wightman Case* was decided but has since been repealed. 36 *Del. Laws, c.* 268, § 2. Now in the *Wightman Case* it was said that the first paragraph of *Section* 3850 when read in connection with *Section* 3856 was plainly applicable in suits against non-residents where title to property located in the jurisdiction is sought to be adjudicated. Since *Section* 3856 is now repealed, the defendants argue, it must follow that *Section* 3850 can no longer have the application which it was said to have when read in the light of the repealed section. The argument proceeds upon the erroneous assumption that the vitality of *Section* 3850 as applied to such cases as this one and as the *Wightman Case* was bor-

rowed entirely from *Section* 3856. The opinion in the *Wightman Case* did not say so. It simply said in substance that the procedure provided for in the first paragraph of *Section* 3850 was linked up with the then existing *Section* 3856. That of course was true. But *Section* 3850 has, as it had in its original form, an operative force *proprio vigore*. *Section* 3856 restrained its operation and the particulars of its restraint evidenced its extent as was in substance indicated, though not expressly stated, in the *Wightman Case*. Repealing the restraint upon a power cannot be said to constitute its destruction. The repeal of *Section* 3856 is not to be considered as aimed at the obliteration of *Section* 3850. Inasmuch as *Section* 3856, by one of its clauses in particular, impliedly conferred a power of doubtful constitutionality (See *Skinner v. Educational Pictures Corp.*, 14 *Del. Ch.* 417, 129 *A.* 857) the likelihood is that that fact accounts for its repeal.

5. Finally it is objected that the affidavit on which the order of publication was based is defective in that it avers that the trustees "reside outside of the State of Delaware," stating their residence upon information and belief to be in Pennsylvania, whereas the statute (first part of *Section* 3850) requires the affidavit to show that the defendant is "out of the State."

The case of *Baker v. Baker, Eccles & Co.*, 162 *Ky.* 683, 173 *S. W.* 109, *L. R. A.* 1917C, 171, is cited in support of this contention and said by the solicitor for the defendants to be impossible of differentiation from the case *sub judice* upon the point in support of which it is cited. I cannot agree with that statement. I think the cited case is clearly distinguishable. It is so for the reason that the Kentucky statute (*Civ. Code Prac.*, § 57) there under examination required that the affidavit should show not only that the defendant is a non-resident of Kentucky but further that he is "believed to be absent therefrom." The affidavit which was filed in that case stopped at averring that the

defendant was believed to be out of the State. The case, further averment, expressly exacted by the statute, that the defendant was believed to be out of the State. The case, therefore, does not deal with a definition of whether non-residence may constitute a being "out of the State," which is the question here. The Kentucky statute in terms required that an averment of non-residence should be supplemented by an additional averment of belief that the non-resident is absent from the State. Now that being so, no question of interpretation of statutory words was before the Kentucky court. The only question was whether an exact compliance with the statutory requirements as to the contents of an affidavit fundamental to the exercise of the court's jurisdiction could be dispensed with. The Kentucky court, in line with the settled rule upon the subject, held the plaintiff to a strict compliance with the statute's requirement.

Such is not the question here. The question here is one of interpretation of the meaning of the statute's language, viz., the question of whether the legislative expression "out of the State" can be taken to embrace residence in another State. That is the sort of question which was before the court in *Foster v. Givens, et al.,* 67 *F.* 684, 693, decided in the Circuit Court of Appeals, Sixth Circuit, by Judges Taft, Lurton and Severns. In that case the statute required that the affidavit should show that the defendant was "out of this commonwealth," and in that respect the statute was in substance identical with ours. The affidavit in the cited case assumed to meet the statute by stating that the defendants were "not inhabitants of this commonwealth." Here the affidavit undertakes to meet the statute by stating that the defendants "reside outside of the State." This averment may be taken to be substantially the same as that found in the cited case, when it is considered that Judge Lurton in speaking for the court stated that the word "inhabitant" refers primarily to one's abode or residence,

and that "to be out of this commonwealth" implies one permanently out, as a non-resident or non-inhabitant. I am of the opinion, as apparently was the court in that case, that "non-inhabitant" and "non-resident" are synonymous and that as in that case an averment that the defendants were not inhabitants of Kentucky was the equivalent of saying that they were "outside of" the commonwealth, so here the averment that the defendants were not residents of Delaware but were residents of Pennsylvania is likewise the equivalent of saying that they were "out of the State" of Delaware; and so the meaning of the statute here, as the court held there, has been met.

It is quite true that statutes of the sort here involved must be strictly followed. *Cantor v. Sachs, et al.,* 18 *Del. Ch.* 359, 162 *A.* 73. But this rule does not forbid interpretation. The rule is applied only after interpretation discovers the statute's meaning; and while the principle of construction in such cases is the one of strictness, the strictness nevertheless should be neither strained nor hypercritical.

The motion will be overruled. Order accordingly.