**ECKMAR CORP., Plaintiff,**

**v.**

**Jean MALCHIN, Defendant.**

Court of Chancery of Delaware, New Castle.

Sept. 25, 1972.

Leroy A. Brill, of Bayard, Brill & Handelman, Wilmington, and Stephen M. Axinn and Dennis J. Drebsky, of Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Jean Malchin, pro se.

DUFFY, Chancellor:

The issue before the Court is whether or not defendant should be ordered to return to plaintiff 52.5 shares of its preferred stock.

## A.

On August 8, 1969 Eckmar Corp., a Delaware corporation (plaintiff) and its whol-

ly-owned subsidiary, Eckmar Career Corporation (ECC), entered into agreements with Career Originals, Inc., and its Stockholders. Briefly, the agreements provided for the merger of Career into ECC and the exchange by the Stockholders of their shares for Eckmar Series A Preferred Stock which was created solely for the acquisition. The agreements are quite complex, with elaborate protective provisions running to each side, and I will refer to them only to the extent necessary for decision purposes. The Eckmar Preferred was not registered under the Securities Act of 1933 and therefore was restricted as to transferability. But it was convertible into common and the plan contemplated such conversion when a registration statement was approved.

Jean Malchin (defendant) was a finder in the acquisition. On August 13, 1969 Eckmar made a written agreement with Malchin which provides:

" . . . Eckmar will issue to you [Malchin] as a finder's fee 4/101 of the number of shares of Eckmar Preferred Stock which may be issued to the stockholders (Stockholders) of Career in connection with the acquisition. You shall be entitled no other compensation nor reimbursement of your expenses.

Eckmar will issue the shares to you in installments concurrently with the issuance of shares to the Stockholders. If the Stockholders are required to return any shares, you will return to Eckmar a proportionate number.

You have agreed that you will be taking all shares of Eckmar Preferred Stock issued to you hereunder and all shares of Eckmar Common Stock into which such Preferred Stock is convertible for investment and not with a view to distribution or resale unless a registration statement under the Securities Act of 1933 is effective with respect thereto or you have received either a no action letter from the Securities and Exchange Commission or an opinion of Eckmar's counsel to the effect that sale may be effected without registration. You shall have the same rights with respect to registration as the Stockholders have under their agreement with us.

If for any reason the acquisition does not close, regardless of alleged default or fault, you shall not be entitled to any fee or other compensation. In the event of rescission of the acquisition under the provision of the agreement between the Stockholders and Eckmar, you will return to Eckmar all shares theretofore delivered to you hereunder."

The agreement between Eckmar and the Stockholders provided that if the latter requested registration of Eckmar common stock in 1970, and "if no registration is effective with respect to the common requested to be registered by December 31, 1970," then the Stockholders could rescind the entire transaction by notice given on or before March 15, 1971. The agreement was amended by a writing in which the Stockholders said:

"We hereby consent that the time by which the 1970 Registration Statement is to be effective shall be extended until June 30, 1971.

All references in . . . the Stockholders-Eckmar Agreement to . . . December 31, 1970 shall be deemed to refer to June 30, 1971; and all references to March 15, 1971 shall be deemed to refer to September 15, 1971."

It is undisputed that Malchin was not advised of this amendment before it was made.

The agreements were implemented and Eckmar Preferred was issued to the Stockholders and to Malchin. The Stockholders requested registration of the Eckmar common but that was not accomplished within the original or the extended time period. The Stockholders elected to and did rescind the entire transaction. Consequently, they returned to Eckmar all Preferred Stock they had received and Eckmar deliv-

ered to them the ECC stock, all of which had been escrowed to assure performance. Eckmar then demanded return of its Preferred held by Malchin. He refused to deliver the shares and this action followed. After Malchin filed an answer Eckmar moved for summary judgment and this is the decision on that motion.

### B.

■ Malchin argues that "jurisdiction does not lie with the courts of the State of Delaware but in the State of New York" because the stock certificates are there and because all transactions leading to the agreements took place in New York. This argument is without merit. Malchin made a personal appearance in this Court by filing an answer to the complaint; therefore, this Court clearly has jurisdiction over his person. And as to jurisdiction over the stock, 8 Del.C. § 169 provides:

"For all purposes of . . . jurisdiction of all courts held in this State . . . the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State."

Hence, for jurisdictional purposes both Malchin and the stock which is the subject of the suit are in this State. Hodson v. Hodson, 32 Del.Ch. 76, 80 A.2d 180 (1951); Perrine v. Pennroad Corp., 19 Del.Ch. 368, 168 A. 196 (1933). And, as to governing law, Malchin made no record showing that New York law is any different than our own. Under these circumstances, the Court applies Delaware law.

Tracy v. Prudential Ins. Co. of America, 34 Del.Ch. 207, 101 A.2d 321 (1953); and see Hopkins v. Chesapeake Utilities Corp., Del.Super., 290 A.2d 4 (1972).

### C.

■ Malchin argues also that he is entitled to retain the Eckmar shares because the date for rescission (by the Stockholders) could not be extended, at least as to his rights, without his knowledge and consent. To the extent that this contention depends upon his status as either a party to or a third-party beneficiary of the agreement, it is without merit. He is neither: his signature does not appear on the copy of the agreement in the record, none of its terms run to his benefit, and none bind him to any performance.[1] Eckmar and the Stockholders were clearly free to amend their contract without consulting Malchin.

■ I turn now to the critical question of whether Malchin's right to keep the shares became absolute when the original date for serving notice of rescission passed. My analysis of the transaction and the documents persuades me that it did not.

A reading of the agreements shows that Malchin's right to compensation is related in all significant respects to the acquisition. Thus his compensation is payable as a finder "in connection with the acquisition" by Eckmar and he is to be paid, only and entirely, in the same Preferred Stock "which may be issued to the . . . (Stockholders) of Career in connection with the acquisition." His fee is to be a function of the total shares issued, i.e., $4/101$. And, significantly, his right to shares is in

---

1. In his verified answer Malchin states that he signed the agreement between Eckmar and the Stockholders and he alleges, in general terms, provisions which are different from those pleaded in the complaint. But the affidavits, particularly the copy of the Stockholder agreement and the amendment thereto, which were submitted by Eckmar in support of its motion, effectively refute that allegation: Malchin's signature does not appear on the agreement and its terms are as alleged in the complaint. Hence, his general allegations are effectively rebutted by the specifics shown in Eckmar's record. Malchin also states in his brief that he initialed each page of the original Stockholder agreement and that production thereof would so prove. But he did not seek production and a statement in a brief, even when made by a party, is not a part of the record on the motion.

direct proportion to that of the Stockholders. Thus, if the acquisition did not close "for any reason," he was not entitled to any shares or fee; if it did close and the Stockholders were required to return any shares, Malchin was required to return a "proportionate number" of his shares; and if the acquisition was rescinded, Malchin was obliged to "return to Eckmar all shares" delivered to him. The latter requirement was based upon a rescission "under the provisions of the agreement between the Stockholders and Eckmar."

The agreement between Eckmar and the Stockholders gave the latter the right to request the registration of Eckmar common stock (into which the Preferred was convertible) and if that was not completed by December 31, 1970, the Stockholders had the right to rescind the transaction by giving notice thereof on or before March 15, 1971. While Malchin had an interest in completion by that date, viewing the transaction as a whole, he did not have an absolute right to his compensation once that date passed. I say this for several reasons. First, issuance of an effective registration statement was critical to the entire transaction, as the documents show. Indeed, Malchin's compensation agreement refers specifically to such statement and implicitly shows that Malchin would benefit from its issuance. Second, the only reason shown for enlargement of the time was so that a registration statement could be secured. Third, Eckmar was bound by a "best efforts" requirement to seek such a statement and there is nothing here to show that it did not meet that requirement.

Since (a) an effective registration statement was a key requirement of the transaction, and (b) the only reason for the extension shown by the record was to obtain such statement, and (c) the time period of the extension is not unreasonable on its face, and (d) Malchin's right to compensation contemplated a fully consummated acquisition, I conclude that plaintiff has demonstrated its right to relief. I emphasize that there is no showing of fraud or bad faith on the part of Eckmar in its dealings with Malchin.

Finally, I note that the 52.5 shares in Malchin's hands constitute *all* of the issued and outstanding stock of Eckmar Preferred. As the holder of the entire class he can effectively veto any corporate action which required stockholder consent by classes. The parties certainly never intended that result following a rescission of the entire transaction with Career Originals.

\* \* \*

Plaintiff's motion for summary judgment will be granted and defendant will be ordered to return the Preferred Shares or, alternatively, the shares will be cancelled.