GRAHAM P. HUNT, Receiver, appointed by the Court of Common Pleas of Hamilton County, Ohio, for the partnership consisting of J. Nevin Roberts and Walker P. Hall, trading under the firm name of ROBERTS & HALL, *v.* DRUG, INCORPORATED, a corporation of the State of Delaware.

██

██

*(September 22, 1931.)*

PENNEWILL, C. J., and RICHARDS, J., sitting.

*Aaron Finger* (of Richards, Layton and Finger) and *Charles P. Taft* (of Taft, Stettinius and Hollister, of Cincinatti, Ohio) for plaintiff.

*Ivan Culbertson* (of the office of Hugh M. Morris) for defendant.

Superior Court for New Castle County, No. 88, March Term, 1931.

PENNEWILL, C. J., delivering the opinion of the Court:

The question presented to the Court is whether the fact that certificates endorsed in blank were stolen and embezzled from the rightful owner by a dishonest employee, without negligence of the owner, can be shown in order to defeat the claims of a *bona fide* purchaser for value?

It seems to be conceded by both sides that the decision in this case depends upon the law of the State applicable thereto. The plaintiff contends that the law of the State where the transfer of the stock certificates occurred must control, and that such transfer was made in the State of New York.

The defendant does not deny that the transfer took place in that State, but claims that the law of this State applies because it is the State where the corporation was created.

Delaware has never adopted the "Uniform Stock Transfer Act" which has been enacted in some States, including New York. In Delaware the common law applies and under such law it is claimed that a *bona fide* purchaser for value from a thief could not assert title to a stock certificate which had been endorsed in blank.

The plaintiff admits that such is the general rule of the common law, but says it does not apply in the case of any one whose negligence was such as to facilitate the theft or fraud of the wrongdoer.

The plea alleges that the loss occurred without negligence on the part of the true owner, and the plaintiff concedes that this allegation must be given its full effect for the purposes of the demurrer. But, it is argued, that "The allegations of theft, embezzlement and abstraction, treating the three words as equivalent, and the allegation that it was done by a dishonest employee, would seem to be sufficient to show negligence. In substance, the plea admits that the stock was endorsed in blank and sets up that it was

embezzled by a dishonest employee. The word 'embezzlement' in itself connotes a lawful possession and a subsequent conversion."

As already said, the plea alleges that the loss of the certificates occurred without negligence on the part of the true owner, and we think there is no language in the plea that rebuts the allegation or from which negligence should be inferred.

■ ■ The conclusion, therefore, must be that if the common law applies the dishonest employee who stole the certificates, which had been endorsed in blank by the owner, could convey no title to the purchaser. No authorities are cited to the contrary.

Does the law of Delaware, which is the common law, apply to this case?

A number of cases, more or less in point, have been cited but we think it unnecessary to discuss more than a few of them.

The plaintiff relies with much confidence on the case of *Direction Der Disconto-Gesellschaft v. U. S. Steel Corp.,* decided in 1925 by the highest Court of this country and reported in .267 *U. S.* 22, 45 *S. Ct.* 207, 69 *L. Ed.* 495. We take a synopsis of that case from plaintiff's brief:

"It was a case in which two hundred shares of U. S. Steel Corporation were issued in two certificates to New York stock brokers, or, in other words, in street names. These certificates were physically in London, one pledged and the other not. Both were seized by the Public Trustee, a British Corporation, under the Trading With The Enemy Act [50 *USCA Appendix*]. A suit was brought by a German bank, claiming to be the owner, against the U. S. Steel Corporation and the Public Trustee, in the Southern District of New York. The case was decided by Judge Learned Hand [*D. C.*], 300 *F.* 741. He had to decide whether the transfer of title was governed by the law of Great Britain where the seizure took place, or by the law of New Jersey. He held that the law of the place of transfer governed. There was cited to him in opposition to this position the case of Jellanik [*Jellenik*] *v. Huron Copper Mfg. Corp.,* 177 *U. S.* 1 [20 *S. Ct.* 559, 44 *L. Ed.* 647], which held that for the purposes of a suit to remove a cloud on the title to the plaintiff's stock, the State of the corporation was the State of the stock. In answer to this contention, Judge Hand pointed out that the Jellanik [*Jellenik*] *Case* only held that the certificates had a *situs* there, not that they had no *situs* else-

where; that a share if not a chose in action is a legal relation and can have no *spatial* character except by virtue of the parties to the relation. Wherever either party is, there is the property as respects such parts of the relation as touch that party. There is no necessary inconsistency unless you presuppose that because the certificates, legally speaking, are in one place they cannot be in any other place. This case was appealed to the Supreme Court of the United States and is reported in the citation already given. Justice Holmes in the Statement of Facts, stated that the discussion of the District Judge left nothing to be added. He went on to say that the argument for the control of the law of New Jersey over the situation by reason of its power over the United States Steel Corp., was overworked. He pointed out that the United States and its constituent States, no doubt theoretically could draw a line of fire around its boundaries and recognize nothing concerning the corporation or any interest in it that happened outside. But it prefers to consider itself civilized and to act accordingly."

The plaintiff cites also *Barstow v. City Trust Co.,* 216 *Mass.* 330, 103 *N. E.* 911.

The defendant relies upon the following authorities:

*Section* 72 of the *General Corporation Law* of this State; *Bouree, et al., v. Trust Francais, etc.,* 14 *Del. Ch.* 332, 127 *A.* 56, 57, which was a case involving the *situs* of corporation stock; *Martin v. Central Trust Co.,* 327 *Ill.* 622, 159 *N. E.* 312; *Gamble v. Dawson, et al.,* 67 *Wash.* 72, 120 *P.* 1060, *Ann. Cas.* 1913D, 501; *Holmes v. Camp, et al.,* 219 *N. Y.* 359, 114 *N. E.* 841; *Jellenik v. Huron Copper Mining Co.,* 117 *U. S.* 1, 20 *S. Ct.* 559, 44 *L. Ed.* 647; *Andrews v. Guayaquil & Q. Ry. Co., et al.,* 69 *N. J. Eq.* 211, 60 *A.* 568.

We assume that the Federal Law on the subject is expressed in the United States Supreme Court case to which reference has been made.

In the last mentioned case the Court concurred in the opinion given by Judge Hand in the District Court, in which the *Jellenik Case,* relied on by the defendant, was distinguished and held not to be inconsistent with the decision of the District Court.

It may be said that some of defendant's citations do not involve the exact question raised in the instant case; and, on the other hand, it may be admitted that the opinion of Judge Hand, to which reference has been made and

338

which was followed by the Supreme Court, is a very able treatment of the subject.

But the language used by the Chancellor of this State in the *Bouree Case, supra,* is very general and broad enough, we think, to cover the question raised in the present case.

The Chancellor's language, after quoting *Section* 72 of the *General Corporation Law* of this State, is as follows:

"When the Trust Francais, a foreign corporation, acquired title to the stock of the Franco-Wyoming Oil Company which stands in its name, it therefore became possessed of property which by express language of the act under which the stock was created and issued is in legal contemplation located in this State. While the Trust Francais is a non-resident of Delaware, yet it holds shares of stock located in this jurisdiction. Its stock is as certainly deposited in this State as are the land and tangible chattels which are physically located here. No stockholder who accepts stock in a Delaware corporation can be heard to deny its Delaware *situs.*

"We have then the case of a non-resident defendant holding property which, by virtue of the law authorizing the existence of the property, is located in this state 'for all purposes of title, action.' * * * The language of *Section* 72 is very broad. It fixes the *situs* of stock of Delaware corporations in Delaware for almost every conceivable purpose except that of taxation."

Said *Section* 72 of the *General Corporation Law* (*Revised Code* 1915, § 1986) provides as follows:

"For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the *situs* of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this Chapter or otherwise, shall be regarded as in this State."

It might be argued that while this provision of our *Corporation Law* fixes the *situs* of stock in a Delaware corporation in the State of its creation, for purposes of title, action and jurisdiction of the Courts of that State, it does not mean that such stock cannot have a *situs* also in the State where the certificates or owner happen to be, and the transfer takes place.

But it seems to us that the Chancellor did not so construe *Section* 72. We may have misconceived his meaning, but his opinion seems to hold that the *situs* of stock in a

Delaware Corporation, in a suit brought here, is in the State of its creation, and can be nowhere else except for the purpose of taxation. That being so, the present Court feels that it should not make any decision in this case that might conflict with the Chancellor's opinion in the *Bouree Case.*

It may be said the plaintiff made no reply to defendant's argument based on *Section* 72 and upon which so much reliance was placed, and it may be also noted that at the time of the oral argument on the demurrer the plaintiff believed that the Household Products Corporation, that issued the stock in question, was a corporation of the state of Ohio, one of the states that had adopted the *"Uniform Stock Transfer Act."* But counsel admit in their brief that they were in error in that regard, having learned since the oral argument that said corporation was created in Delaware.

For the reasons above given, the demurrer will be overruled.