80 A.2d 180 (1951)
HODSON et al.
v.
HODSON CORP. et al.
Civil Action No. 187.
Court of Chancery of Delaware, New Castle.
April 18, 1951.
*181 William H. Bennethum, of Morford, Bennethum, Marvel & Cooch, of Wilmington, for plaintiffs.
Hugh M. Morris and George T. Coulson, of Morris, Steel, Nichols & Arsht, of Wilmington, for defendants.
WOLCOTT, Chancellor.
The complaint alleges that The Hodson Corporation issued 34 shares of its preferred stock to Jessie Blanche Price, and that the issuance of such stock was a fraud on the other shareholders. The relief sought is a preliminary injunction, an ultimate determination that the 34 shares of preferred stock are null and void, and that the certificates be ordered to be surrendered for cancellation.
The corporate defendant appeared and answered the complaint. By order, Jessie Blanche Price was directed to appear and answer the complaint or suffer judgment to be taken pro confesso. The order directed substituted service to be made in conformity with the statutes and rules. With leave of court, defendants' attorneys appeared specially for Jessie Blanche Price and moved to vacate the order for appearance and to quash and vacate the substituted service on Jessie Blanche Price.
The corporate defendant moved for summary judgment in its favor on the ground that Jessie Blanche Price is an indispensable party to the action and that this court is without jurisdiction over her because she is not within the State of Delaware, and because the shares of stock in question, the certificates therefor, or any other property of Jessie Blanche Price are not within the State of Delaware.
The two motions in effect raise the same questions and will be disposed of as though they were one.
It is the rule, long settled in this state, that the owner of shares of stock in a Delaware corporation is an indispensable party to an action to cancel such shares or to restrain the voting of or the payment of dividends on such shares. Bouree v. Trust Francais des Actions de la Franco-Wyo. Oil Co., 14 Del.Ch. 332, 127 A. 56; Chappel v. Standard Scale & Supply Corporation, 15 Del.Ch. 333, 138 A. 74; West v. Sirian Lamp Co., 28 Del.Ch. 328, 42 A. 2d 883. As the owner of the shares in controversy, Jessie Blanche Price is, therefore, an indispensable party.
Substituted service on Jessie Blanche Price was purportedly obtained pursuant to the provisions of Section 4374, R.C. 1935, but no seizure of property of the defendant has been made. Defendants argue that this action is one essentially in personam and that, therefore, substituted service of process upon a non-resident defendant is governed by the provisions of the first paragraph of Section 4374 requiring *182 seizure in limine of property of the non-resident located in Delaware in order to support jurisdiction. In the event of the failure of the non-resident defendant to appear, then sufficient of the property so seized may be sold to satisfy the demand of the plaintiff. If this action were an action in personam, the argument made necessarily would be accepted. Cantor v. Sachs, 18 Del.Ch. 359, 162 A. 73, 78.
However, the case at bar seeks a judgment declaring the stock in question to be null and void. It is an action which is directed essentially toward the validity of a res which, it is contended, is located within the state. It is true that as additional relief the plaintiffs pray that the surrender of the certificates be ordered for cancellation, but that fact does not change the fundamental nature of the action, which is quasi in rem. When that is the fact, if the property in question has its situs in Delaware, the jurisdiction of this court is clear and its power broad in compelling obedience to its judgment, whether or not seizure of the res has been made prior to substituted service by notice and publication. Section 4374 affords a method of substituted service on nonresident defendants in such cases. Perrine v. Pennroad Corp., 19 Del.Ch. 368, 168 A. 196, 203; Cantor v. Sachs, supra.
The question to be determined in the pending case, therefore, is whether or not the 34 shares of preferred stock of the defendant corporation are property located within the State of Delaware for the purposes contemplated by Section 4374, R.C. 1935 when neither the owner nor the certificates are within the jurisdiction.
Section 73, Section 2105, R.C.1935, of the General Corporation Law of Delaware provides that for all purposes of title, action and jurisdiction of courts, the situs of shares of a Delaware corporation shall be regarded as within the State of Delaware.
Pursuant to the provisions of Section 73, this court, prior to 1945, held on a number of occasions that the stock of a Delaware corporation has its situs in Delaware and may therefore be seized to compel the appearance of nonresident defendants, Bouree v. Trust Francais des Actions de la Franco-Wyo. Oil Co., supra; Wightman v. San Francisco Bay Toll-Bridge Co., 16 Del.Ch. 200, 142 A. 783; Nye Odorless Incinerator Corp. v. Nye Odorless Crematory Co., 18 Del.Ch. 179, 156 A. 176. Similarly, shares of stock of a Delaware corporation have been subjected to attachment in the law courts. Hunt v. Drug, Inc., 5 W.W.Harr. 332, 156 A. 384.
In 1945 the General Assembly enacted the Uniform Stock Transfer Act, 45 Del. Laws, c. 159, without repealing Section 73 of the General Corporation Law. The precise question, therefore, raised is the effect of the adoption of the Uniform Stock Transfer Act upon the rule of situs of shares of stock in a Delaware corporation theretofore applied in the courts of this state. If, as the defendants contend, the effect of the adoption of the Uniform Stock Transfer Act was to make the certificate the share of stock itself, then the stock in controversy does not have its situs within the State of Delaware and this court is without jurisdiction of the present cause.
Section 73 of the General Corporation Law remains as part of our law except in so far as it was modified by necessary implication by the adoption of those sections of the General Corporation Law which embody the Uniform Stock Transfer Act. The repeal of existing law by implication is not favored and only occurs when the two statutes are so inconsistent that reconciliation is impossible, Mayor & Council of Wilmington v. State, ex rel. duPont, 5 Terry 332, 57 A.2d 70. It must be presumed, therefore, that the failure of the Legislature to expressly repeal Section 73 when adopting the Uniform Stock Transfer Act means that Section 73 retains some effect if that effect is not inconsistent with the Uniform Stock Transfer Act.
It is to be observed that the instant suit is one for the cancellation of stock which, as far as the record before me shows, has not passed into the hands of *183 an innocent transferee for value. We are concerned in this case with the validity of stock as to which the corporation derivatively and the person who received the original issue are contesting.
The plaintiffs rely upon three reported decisions in support of their contention that the enactment of the Uniform Stock Transfer Act did not change the rule as to situs of shares of a Delaware corporation. In Harvey v. Harvey, 7 Cir., 290 F. 653, it was sought to cancel an agreement to deposit stock in a Wisconsin corporation, and to enjoin the voting of the stock subject to the deposit agreement. The Uniform Stock Transfer Act was in effect in Wisconsin and the action was sought to be defeated by the defendants on the ground that, by reason thereof, the situs of shares of stock of a Wisconsin corporation was at the location of the certificates. It was held that the adoption of the Uniform Stock Transfer Act did not change the situs of shares of a Wisconsin corporation.
In Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887, 145 A.L.R. 612, suit was instituted against a foreign executrix, a resident of Massachusetts, who held stock of a Virginia corporation and who was served personally while temporarily within the State of Virginia. It was contended that service upon her as executrix was invalid because she owned no property as executrix located in Virginia. It was held that service upon her was valid service since, as executrix, she owned stock having a situs within the State of Virginia. This holding was made despite the fact that the Uniform Stock Transfer Act was in effect in Virginia. Code 1942, § 3848(2) et seq.
To the same effect is McQuillen v. National Cash Register Co., D.C., 13 F.Supp. 53.
The foregoing cases, which are all that have been called to my attention passing on the precise question before me, are uniform in holding that the purpose of the Uniform Stock Transfer Act is to make stock certificates negotiable instruments and thus protect an innocent purchaser of such certificates who has paid value, and not to merge the share itself with the certificate.
The defendant argues that the three cited cases were wrongly decided. The Harvey case is attacked on the ground that it is decided upon the authority of Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647, decided in 1899 prior to the enactment of a Uniform Stock Transfer Act in any state. The Jellenik case embodies the same rule as to situs of stock applied by this court prior to the enactment of the Delaware Uniform Stock Transfer Act. It is argued by the defendant that the foundation of the Jellenik case was swept away by the Uniform Stock Transfer Act. However, in 1933, after the enactment in New Jersey of the Uniform Stock Transfer Act, N.J. S.A. 14:8-23 et seq., in Rogers v. Guaranty Trust Company of New York, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, the Supreme Court reapproved the Jellenik case in holding that for the purpose of cancellation of shares of stock of New Jersey corporations, the situs of that stock was in the State of New Jersey and that the question could be effectively determined in New Jersey courts in proceedings in rem with service on non-resident defendants by publication. The defendant further argues that in the case of Montfort v. Korte, 7 Cir., 100 F.2d 615, the same court which decided the Harvey case failed to follow its former ruling. An inspection of that opinion, however, shows that it involved a controversy seeking to set aside a fraudulent transfer of stock and thus came directly under the provisions of the Uniform Stock Transfer Act of Indiana, Burns' Ann.St. § 25-701 et seq.
Defendant criticizes the case of McQuillen v. National Cash Register Co., supra, by reason of McQuillen v. Dillon, 2 Cir., 98 F.2d 726, refusing to enforce the decree entered in McQuillen v. National Cash Register Co. However, it appears that that decree was not enforced because primarily the record on which the decree was based did not disclose ownership of the stock in question at the time of suit *184 in the defendant against whom the decree was sought to be enforced, and for the additional reason that in the Dillon case the plaintiff was seeking to enforce a decree in rem by an action in personam.
The defendants cite a number of cases in support of their contention that the Uniform Stock Transfer Act of Delaware has merged the shares of Delaware corporations into the certificates so that the situs of such shares is the location of the certificates. An examination of these cases, however, will disclose that in all of them the court was protecting the rights of an innocent transferee for value of the certificate. Obviously, the provisions of the Uniform Stock Transfer Acts are intended to accomplish this purpose.
It seems obvious to me that the intent underlying the Uniform Stock Transfer Act is to afford protection to purchasers of stock certificates by making those certificates as fully negotiable as possible, but the negotiability of the certificate has no effect upon the situs of the shares thus represented. This being so, the law as to situs of shares of stock of a Delaware corporation has remained unchanged by the enactment.
The stock certificate now being a negotiable instrument is similar in nature to a promissory note, and it seems that the situs of the debt thus represented is the domicile of the debtor for some purposes at least, irrespective of where the note may be located or may be payable. Wyman v. Halstead, 109 U.S. 654, 3 S.Ct. 417, 27 L.Ed. 1068.
The case of Weinress v. Bland, Del.Ch., 71 A.2d 59, by analogy, is pertinent to the case at bar. In that case, a debt secured by the pledge of stock of a Delaware corporation was seized under Section 4374, R.C.1935 to compel the appearance of a non-resident defendant. The certificates for the stock were not physically in Delaware. Recognizing that the collateral was beyond the reach of this court, nevertheless, the Vice-Chancellor held the debt subject to seizure and to sale, which would transfer to the purchaser all the rights of the debtor, including the right to pay the debt and recover the collateral wherever it could be found. The Vice-Chancellor recognized that the intervention of the rights of a bona fide purchaser would alter the situation since, by reason of the Uniform Stock Transfer Act, his rights would be superior to those of the purchaser at the sequestrator's sale.
By reason of the foregoing, the motion of the corporate defendant for summary judgment, and the motion of the individual defendant to vacate the order for substituted service and to quash the service are denied.
An order may be presented on notice.