**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 3, 2024

R. Bruce McNew
Cooch and Taylor, P.A.
The Brandywine Building
1000 N. West Street, Suite 1500
Wilmington, DE 19801

Lisa M. Zwally
Bryan T. Reed
Greenberg Traurig, LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801

> Re: *Mitchell Partners, L.P. v. AMFI Corp. et al.*,
> C.A. No. 2020-0985-KSJM ("*AMFI I*");
>
> *Mitchell Partners, L.P. v. AMFI Corp.*,
> C.A. No. 2020-0986-KSJM ("*AMFI II*")

Dear Counsel:

This letter resolves the defendants' motion to dismiss Counts III through V of the Second Amended Complaint in *AMFI I* and the motion to strike aspects of that complaint.[1]

## I.    FACTUAL BACKGROUND

I assume the readers' familiarity with these actions given my prior decisions.[2] For the purposes of the defendants' motion to dismiss Counts III through V, I draw the facts from the Second Amended Verified Class Action Complaint (the "Second Amended Complaint").[3]

---

[1] C.A. No. 2020-0985-KSJM, Docket ("Dkt.") 111 ("Defs.' Mot. to Dismiss and Strike").

[2] *See* Dkt. 46; Dkt. 67.

[3] Dkt. 108 (Sec. Am. Compl.).

The plaintiff, Mitchell Partners, L.P., is an investment firm that holds shares in AMFI, Corp., a Delaware corporation.

In August 2020, AMFI disclosed as part of its FY 2019 financial disclosures, allegedly for the first time, that it had 20,000 outstanding Class B shares in addition to the known Class A shares. AMFI authorized the Class B shares in 1982 but never issued any. AMFI did not disclose the existence of the Class B in 1983 when soliciting stockholder approval for a Class A 300-to-1 reverse stock split (the "Reverse Stock Split"). And none of the documents disseminated by AMFI over the following 40 years stated that any Class B shares were either issued or outstanding.

According to Mitchell Partners, AMFI has given conflicting narratives concerning the shares. AMFI says that the Class B shares were issued in 1983 to AMFI's then-wholly owned subsidiary, American Fidelity Life Insurance Company ("AFL"). But AMFI has also stated that the shares were issued in 1982 to AFL. And AMFI has stated that the shares are now owned entirely by AFL. But AMFI has also stated that the shares are owned by AMFI's subsidiaries, T.B.H. Corp, Little Sabine, Inc., Dunes Motel, Inc., and Holi Corp. (the "Subsidiary Defendants").

In the Second Amended Complaint, Mitchell Partners added Counts III through V and named the Subsidiary Defendants as additional defendants.

In Count III (asserted against AMFI and the Subsidiary Defendants), Mitchell Partners "seeks a declaratory judgment that no Class B shares of AMFI are issued or outstanding" because "[n]o valid Board authorization by AMFI's Board under [8 *Del.*

*C.* § 152] was adopted."[4]  Count III makes a claim in the alternative—that if the Class B shares were validly issued, then only 100 shares were issued and they are owned by AFL.[5]

In Count IV (asserted against Jack B. Yancy, Carolyn Pugh, Barbara Woodbury, Marilyn Hess, and Carol Harrison (the "Director Defendants," and together with AMFI and the Subsidiary Defendants, "Defendants")), Mitchell Partners claims that "[t]he foregoing conduct constituted breaches of the fiduciary duties of the [Director] [D]efendants as such occurred during their tenures as officers and/or directors."[6]

In Count V (asserted against all Defendants), pled in the alternative to Counts III and IV, Mitchell Partners seeks a declaration that if the Class B shares are found to have been properly issued, then the Reverse Stock Split was invalid, and separately claims (in the same count) that Woodbury and Hess breached their fiduciary duties by approving it.[7]

---

[4] *Id.* ¶¶ 65–68.

[5] Under the alternative theory, Mitchell Partners claims that any transfer constituted waste.  *Id.* ¶ 70.  But Mitchell Partners does not discuss waste in its answering brief, so that theory is waived.  *Voigt v. Metcalf*, 2020 WL 614999, at *8 n.3 (Del. Ch. Feb. 10, 2020).

[6] Sec. Am. Compl. ¶ 73.

[7] Sec. Am. Compl. ¶¶ 75–79.

## II.     ANALYSIS

Defendants moved to dismiss Counts III through V of the Second Amended Complaint under Court of Chancery Rules 23.1 and 12(b)(6).  Defendants also moved to strike "scurrilous allegations" against the Woodbury Family, who are alleged to control AMFI, under Rule 12(f).

### A.      Rule 23.1

Defendants argue that the new counts are derivative and that Mitchell Partners has not adequately alleged demand futility.[8]  Mitchell Partners responds that the new counts are direct but that it adequately alleged demand futility.[9]  Mitchell Partners focused its arguments on demand futility, and this decision follows suit.

Under Rule 23.1, stockholder plaintiffs must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."[10]  Stockholders choosing to allege demand futility must meet the "heightened pleading requirements,"[11] alleging "particularized factual statements that are essential to the claim."[12]  "Plaintiffs are entitled to all

---

[8] Defs.' Mot. to Dismiss and Strike at 17–21.

[9] Sec. Am. Compl. ¶¶ 55–61.

[10] Ct. Ch. R. 23.1(a).

[11] *United Food and Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 876 (Del. Ch. 2020), *aff'd*, 262 A.3d 1034 (Del. 2021).

[12] *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences."[13]

In *Zuckerberg*, the Delaware Supreme Court adopted the "universal test" for demand futility that blends elements of the two precursor tests: *Aronson*[14] and *Rales*.[15] When conducting a demand futility analysis under *Zuckerberg*, Delaware courts ask, on a director-by-director basis:

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
>
> (ii) whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
>
> (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.[16]

"If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile."[17] Although the *Zuckerberg*

---

[13] *Id.* at 255.

[14] 473 A.2d 805 (Del. 1984).

[15] 634 A.2d 927 (Del. 1993).

[16] *United Food & Com. Workers Union & Participating Food Indus. Empls. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1059 (Del. 2021) (quoting *Zuckerberg*, 250 A.3d at 890).

[17] *Id.*

test displaced the prior tests from *Aronson* and *Rales*, cases properly applying *Aronson* and *Rales* remain good law.[18]

Mitchell Partners did not make a pre-suit demand and so it must plead that demand was excused. When Mitchell Partners initiated this action, the AMFI Board compromised five directors—Yancy, Pugh, Woodbury, Hess, and Harrison.[19] To adequately allege demand futility, Mitchell Partners must plead particularized facts creating reason to doubt that at least three AMFI directors were capable of impartially considering a demand.[20]

Here, Mitchell Partners' strongest argument is under the third prong of *Zuckerberg*—that Yancy, Hess, and Harrison lacked independence from the Subsidiary Defendants, and that the Subsidiary Defendants received a material benefit from the alleged misconduct that would be the subject of the litigation demand.

Yancy, Hess, and Harrison are directors of both AMFI and the Subsidiary Defendants.[21] They therefore owe fiduciary obligations to both AMFI and the

---

[18] *Id.*

[19] Sec. Am. Compl. ¶ 10.

[20] *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 989–90 (Del. Ch. 2007) ("Plaintiffs must show that a majority—or in a case where there are an even number of directors, exactly half—of the board was incapable of considering demand." (citation omitted)).

[21] Sec. Am. Compl. ¶ 57 (stating Yancey is a "director of Sabine, Holi, and T.B.H. and President of AFL"); *id.* ¶ 58 (stating Hess is a "director and President of Sabine, Holi, T.B.H., and a director of AFL"); *id.* ¶ 59 (stating Harrison is a "director of Sabine, Holi, T.B.H., and AFL").

Subsidiary Defendants. A dual fiduciary is conflicted for demand purposes where the dual beneficiaries' interests are not aligned.[22] AMFI and the Subsidiary Defendants' interests were not aligned for purposes of the challenged transactions. For that reason, Yancy, Hess, and Harrison face a conflict in exercising their duties as directors of AMFI that renders demand futile as to those directors.

Analytically, one approach would be to conclude that the lack-of-alignment discussion eclipses or subsumes the question of whether the benefit was material to the counterparty—here, the Subsidiary Defendants. To address the issue directly, the Subsidiary Defendants are alleged to have received Class B shares worth millions of dollars from the challenged transactions.[23] It is reasonably conceivable that this

---

[22] *See, e.g., IBEW Local Union 481 Defined Contribution Plan & Tr. v. Winborne*, 301 A.3d 596, 618 (Del. Ch. Aug. 24, 2023) (finding director who served as a fiduciary of a party interested in the challenged transaction was not independent from that interested party and thus could not consider demand); *In re McDonald's Corp. S'holder Deriv. Litig.*, 291 A.3d 652, 687 (Del. Ch. 2023) ("To plead that a director was interested and therefore cannot count toward the requisite majority, a plaintiff can allege facts showing that the director . . . was a dual fiduciary and owed a competing duty of loyalty to an entity that itself stood on the other side of the transaction or received a unique benefit not shared with the stockholders." (citations omitted)); *Cumming v. Edens*, 2018 WL 992877, at *13 (Del. Ch. Feb. 20, 2018) ("Plaintiff has raised a reasonable doubt as to whether Malone, as a director of Walker & Dunlop, was disinterested in the Challenged Transactions. Malone was a dual fiduciary here and the interests of the beneficiaries he served (lender vs. borrower) were not aligned. Accordingly, Plaintiff has adequately pled that Malone was 'interested' for demand futility purposes." (citations omitted)).

[23] Sec. Am. Compl. ¶¶ 11–14 (alleging TBH owns $6 million worth of Class B shares; Sabine owns $5 million worth of Class B shares; Dunes owns $2 million worth of Class B shares; Holi owns $7 million worth of Class B shares).

was material to the Subsidiary Defendants.[24]   Counts III and IV challenge the issuance of Class B shares to the Subsidiary Defendants, so Yancy, Hess, and Harrison are incapable of impartially considering a demand as to those counts.  By the same logic, it is reasonably conceivable that efforts to dilute the Class A through the Reverse Stock Split was material to the Subsidiary Defendants.  Count V challenges the Reverse Stock Split, which purportedly diluted the Class A shares in favor of the Class B shares, benefitting the holders of Class B shares.  So Yancy, Hess, and Harrison are incapable of impartially considering a demand as to those counts.

Accordingly, a majority of the AMFI Board cannot consider a demand, and thus demand is excused.

### B.    Rule 12(b)(6)

Under Rule 12(b)(6), Defendants advance four arguments.  First, they argue that Mitchell Partners does not have standing to pursue the new counts because it did not own AMFI stock when the challenged transactions occurred.  Second, they argue that the new counts are time-barred.  Third, they argue that the Subsidiary Defendants are not proper defendants to the new counts.  Fourth, they argue that

---

[24] At the motion to dismiss stage, receipt of shares worth at least $2 million is material.  That materiality might be later successfully challenged, but for the purposes of this motion, Mitchell Partners has successfully pled that the Subsidiary Defendants received a material personal benefit from the challenged transaction. *See also In re Multiplan Corp. S'holder Litig.*, 268 A.3d 784, 813 (Del. Ch. 2022) (stating that "[a] greater than half-million-dollar payout is presumptively material at the motion to dismiss stage").

certain of the Director Defendants should be dismissed from the actions because they were not on AMFI's Board when the challenged transactions occurred.

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[25]  When considering a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[26]  The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[27]

### 1.    Contemporaneous Ownership Requirement

Under Section 327 of the DGCL, referred to as the "contemporaneous ownership requirement," a stockholder must hold stock at the time of the alleged wrong to have standing to pursue a derivative claim.[28]

---

[25] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[26] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[27] *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

[28] 8 *Del. C.* § 327.  As the court has observed before, the contemporaneous ownership requirement of Section 327 is not universally beloved.  It lacks justification, seems historically rooted in anti-Semitism, and calls out for reexamination.  But it is the law, which this court is bound to apply faithfully.  *See generally SDF Funding LLC v. Fry*, 2022 WL 1511594, at *6 (making this same point); J. Travis Laster, *Goodbye to the Contemporaneous Ownership Requirement*, 33 Del. J. Corp. L. 673, 677–78

Invoking the contemporaneous ownership requirement, Defendants argue that the Class B stock was issued in July 1982, and Mitchell Partners, therefore, lacks standing to challenge the Class B issuance because Mitchell Partners did not acquire its stock until June 1989.[29]

Mitchell Partners' response has two parts. First, as a factual matter, Mitchell Partners alleges that the Class B stock certificates were never issued,[30] and the court must accept this allegation as true under Rule 12(b)(6).

Second, as a legal matter, Mitchell Partners argues that the event relevant to its standing is the issuance of a stock certificate, not events that occurred before. For this proposition, Mitchell Partners relies foremost on *Maclary v. Pleasant Hills, Inc.*,[31] where the plaintiffs brought derivative claims challenging the issuance of 100

---

(2008) (making the argument that the contemporaneous ownership requirement is a rule without any coherent purpose or justification); *Urdan v. WR Cap. P'rs, LLC*, 2019 WL 3891720, at *9–10 & n.5 (Del. Ch. Aug. 19, 2019) (collecting authorities criticizing the logic of the contemporaneous ownership requirement); *Bamford v. Penfold, L.P.*, 2020 WL 967942, at *24 n.18 (Del. Ch. Feb. 28, 2020) (collecting more authorities criticizing the logic of the contemporaneous ownership requirement, including Lawrence E. Mitchell, Gen*tleman's Agreement: The Antisemitic Origins of Restrictions on Stockholder Litigation*, 36 Queen's L. J. 71, 72 & n.1 (2010), suggesting that the requirement was born from anti-Semitic sentiments).

[29] Defs.' Mot. to Dismiss and Strike at 10.

[30] Sec. Am. Compl. ¶ 5 ("The 2019 Financials reported 1,502 'Common stock, Class A' shares outstanding and 20,000 'Common stock, Class B' shares outstanding. No explanation for the sudden appearance of the 20,000 Class B shares in the stockholders' equity section was provided."); *id.* ¶ 29 ("The share certificate purporting to be for Class B shares provided by AMFI in the 220 Action has a number of characteristics indicating it had never been issued.").

[31] 109 A.2d 830 (Del. Ch. 1954).

shares to directors.[32] Three years passed between when the board adopted the resolution authorizing the issuance and when the company issued the stock certificates.[33] The plaintiffs acquired their stock after the board resolution but before the certificates were issued.[34] The defendants pinpointed the date of the harm as that of board authorization approving the stock issuance and invoked the contemporaneous ownership requirement to argue that the plaintiffs lacked standing.[35] The plaintiffs responded that the harm was not completed until the stock certificates were issued, at which time the plaintiffs owned stock.[36]

Chancellor Seitz made the aim of his standing analysis to construe Section 327 consistent with its "primary purpose," which is "to discourage a type of strike suit."[37] He observed that the "statute was not passed to prevent the correction of corporate wrongdoing. It was designed principally to prevent the purchasing of stock to be used for the purpose of filing a derivative action attacking transactions occurring prior to such purchase."[38] Accordingly, he found the statute "should not be construed so as to

---

[32] *Id.* at 832–33.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 833.

[37] *Id.*

[38] *Id.* (citing *Rosenthal v. Burry Biscuit Corp.*, 60 A.2d 106 (Del. Ch. 1948)).

unduly encourage the camouflaging of transactions and thus prevent reasonable opportunities to rectify corporate aberrations."[39]

Consistent with this purpose, the Chancellor held that the corporation should not be rewarded for conduct that would make their board actions less discoverable—such as the delayed issuance of stock certificates. He held that:

> [T]here is nothing in the policy behind the statute which would call for a construction favoring its application in situations where inexcusable inaction on the part of corporate personnel might make it less likely that wrongdoing would be discovered. . . . To consider this transaction as having been completed prior to the issuance of the certificates would sanction an application of the statute not required by its language and not fairly required to effectuate its purpose. On the contrary, it would place a premium on corporate conduct which might run counter to desirable standards.[40]

On this logic, the Chancellor held that "where the issuance of stock is authorized and where certificates are presumably to be issued therefor at once, and that is the very action under attack, the transaction is not complete for purposes of applying 8 *Del. C.* § 327 until the certificates are issued."[41] Because the certificates were not issued until after the plaintiffs acquired stock, they had standing to challenge the issuance, and the Chancellor denied the motion.

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at 833–34.

Similar facts are alleged here. Even if the AMFI Board intended to take some action in connection with the Class B stock in 1982,[42] Mitchell Partners disputes that AMFI issued a stock certificate at that time or ever.[43] It is unclear, therefore, when the allegedly wrongful action had concluded. By the time it was disclosed in August 2020, Mitchell Partners owned stock. The allegations that speak to Mitchell Partners' standing are thus the same allegations at the heart of the parties' dispute. The court cannot dismiss a complaint based on Defendants' version of a key, disputed allegation. The motion to dismiss based on standing is denied.

### 2. Laches

Defendants argue that the new claims are time-barred because the 1982 Class B authorization and the 1983 Class A Reverse Stock Split were disclosed as of 1982 and 1983, respectively, and thus Mitchell Partners was on notice of its cause of action.[44] Mitchell Partners alleges otherwise. Based on its Second Amended Complaint, Mitchell Partners contends that "the earliest any claim could have accrued" was when "AMFI first claimed [the Class B] shares had been issued," which

---

[42] Sec. Am. Compl. ¶ 4 (alleging Class B was authorized in 1982).

[43] *Id.* ¶ 7 ("the Registrar and Transfer agent is the only person who has ever been authorized to issue any AMFI share certificates and she has never issued a Class B Certificate"); *id.* ¶ 29 ("The share certificate purporting to be for Class B shares provided by AMFI in the 220 Action has a number of characteristics indicating it had never been issued.").

[44] Defs.' Mot. to Dismiss and Strike at 29–30.

was in August 2020.[45]  It filed this action on November 13, 2020, which is within a year of that financial disclosure.

Although Mitchell Partners' claims sound in equity, this court draws on analogous limitations periods when assessing whether equitable claims are time-barred by laches.  Each of the new counts is subject to a three-year analogous statute of limitations.[46]  Thus, absent tolling, claims that accrued before November 13, 2017, are time-barred.

Even accepting Defendants' narrative as true, Defendants' theory fails under tolling principles.  According to Second Amended Complaint, AMFI first made its financial disclosure acknowledging that Class B was issued and outstanding in August 2020.  Prior to that time, Mitchell Partners was not on inquiry notice of the alleged acts.[47]  Because Mitchell Partners filed its claims within a year of the public disclosure, the motion to dismiss as time-barred is denied.

---

[45] Dkt. 115 at 38.

[46] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 985–88 (Del. Ch. 2016) (declaratory judgment claim to equitably cancel stock subject to an analogous three-year limitation period); *Vichi v. Koninklijke Philips Elecs. NV*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009) (breach of fiduciary duty claim subject to an analogous three-year limitation period).

[47] *In re Tyson Foods, Inc.*, 919 A.2d 563, 584–85 (Del. Ch. 2007) (discussing tolling principles and inquiry notice) (citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) (TABLE)).

### 3. Necessary Parties

Defendants argue that the Subsidiary Defendants were included solely because they are necessary parties,[48] and they should be dismissed from the new counts because they "are not necessary parties to this action pursuant to Court of Chancery Rule 19."[49]

"[I]t is the rule, long settled in this state, that the owner of shares of stock in a Delaware corporation is an indispensable party to an action to cancel such shares."[50] Because the Subsidiary Defendants are the purported owners of the Class B stock, and the Second Amended Complaint seeks to cancel that class of stock, those owners—the Subsidiary Defendants—are necessary parties to this action.

Defendants add that even if the Subsidiary Defendants are necessary parties, because Mitchell Partners "is not a shareholder of the Subsidiary Defendants, it lacks standing to assert claims against them, and the Subsidiary Defendants must be dismissed."[51] But Mitchell Partners is not asserting claims on behalf of the

---

[48] *See* Dkt. 130 at 41:22–42:2 (4/8/24 Oral Arg. Tr.) ("So I understand the point that they were included simply because they might be necessary parties. We just don't believe they're necessary parties to this case, as we don't believe there's merit to [the] allegation" against them).

[49] Defs.' Mot. to Dismiss and Strike at 34. This is a slightly unusual way to invoke Rule 19; usually, a defendant seeks to dismiss a claim because necessary parties cannot be joined. Because the analysis fails, I do not address whether this unorthodox approach is an appropriate one.

[50] *Hodson v. Hodson Corp.*, 80 A.2d 180, 181 (Del. Ch. 1951) (citing cases).

[51] Defs.' Mot. to Dismiss at 34–35.

Subsidiary Defendants, so it need not be a stockholder of the Subsidiary Defendants in order to bring suit.

Accordingly, Defendants' arguments fail, and the motion to dismiss on this ground is denied.

### 4. Additional Arguments Concerning The Director Defendants

Defendants argue that Pugh, Woodbury, Hess, and Harrison should be dismissed from Count IV because it challenges events that occurred before they were directors.[52]   It is true that directors do not owe fiduciary duties for actions that occurred before they became fiduciaries.[53]   But Count IV alleges that the Director Defendants breached their fiduciary duties by issuing a financial statement in August 2020 that included the Class B shares.  The Director Defendants were on the board at that time, so naming them as defendants is proper.

Defendants also argue that Pugh and Harrison should be dismissed from Count V because they were not on the board at the time of the Reverse Stock Split.[54]

---

[52] Defs.' Mot. to Dismiss and Strike at 33.

[53] *In re Walt Disney Co.*, 2004 WL 2050138, at \*4 (Del. Ch. Sept. 10, 2004) ("[T]here is no reason to impose a fiduciary duty upon Ovitz before he obtained fiduciary authority, Ovitz was not a fiduciary before October 1, 1995."); *see In re Nine Sys. Corp. S'holders Litig.*, 2013 WL 771897, at \*7 (Del. Ch. Feb 28, 2013) ("A claim for breach of fiduciary duty 'must be based on an actual, existing fiduciary relationship between the plaintiff and defendants at the time of the alleged breach.'" (quoting *Omnicare, Inc. v. NCS Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002), *rev'd on other grounds*, 818 A.2d 914 (Del. 2003))).

[54] Defs.' Mot. to Dismiss and Strike at 33–34.

Mitchell Partners does not dispute this proposition.[55] And it is unclear why they are included in Count V.

Accordingly, Defendants' motion to dismiss the additional defendants is denied, except that Pugh and Harrison are dismissed from Count V.

### C. Rule 12(f)

Defendants moved to strike "scurrilous allegations" against the Woodbury Family, who are alleged to control AMFI.[56]

On a motion to strike under Rule 12(f), "the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[57] "Generally, motions to strike are not favored and are granted sparingly."[58]

Defendants take issue with paragraphs 33(b)–(g) of the Second Amended Complaint. The allegations in paragraphs 33(d)–(g) are both scandalous and immaterial.[59] But the allegations in paragraphs 33(b)–(c) are neither. Paragraphs 33(b)–(c) describe the historical dealings of AFL—which is AMFI's wholly owned subsidiary. The motion to strike is granted as to paragraphs 33(d)–(g) of the Second

---

[55] *Voigt*, 2020 WL 614999, at *8 n.3.

[56] Defs.' Mot. to Dismiss and Strike at 2, 35–37.

[57] Ct. Ch. R. 12(f).

[58] *Nichols v. Chrysler Gp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010).

[59] Sec. Am. Compl. ¶ 33 (d)–(g) (alleging the Woodbury family has a history of corporate malfeasance without any support).

Amended Complaint and denied as to paragraphs (b)–(c) of the Second Amended Complaint.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts III through V is denied, except that Pugh and Harrison are dismissed from Count V.   And Defendants' motion to partially strike the Second Amended Complaint is granted as to paragraphs 33(d)–(g) and denied as to paragraphs (b)–(c).

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)